IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Boris Shulman, | ) | C/A No.: 3:21-1887-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND |
| Lendmark Financial, | ) | RECOMMENDATION AND |
| | ) | ORDER |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter comes before the court on a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), [ECF No. 24], filed by Lendmark Financial ("Defendant"), and a motion for sanctions, [ECF No. 29], filed by Boris Shulman ("Plaintiff"). The motion to dismiss being fully briefed [ECF Nos. 27, 28], it is ripe for disposition. Full briefing is not required as to Plaintiff's motion for sanctions. For the reasons that follow, the undersigned denies Plaintiff's motion for sanctions and recommends the district court grant in part and deny in part Defendant's motion to dismiss.

I.      Factual and Procedural Background

On May 9, 2021, Plaintiff filed a complaint against Defendant in the Magistrate's Court of Richland County, South Carolina, concerning the way in which Defendant serviced his loan. [ECF No. 1-1 at 7]. On June 21, 2021, Defendant removed the action to this court based on federal question

jurisdiction, given that Plaintiff's allegations appeared to pertain to allegedly-improper credit reporting under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). [ECF No. 1].

Plaintiff alleges he opened a loan with Defendant in September 2016 ("2016 Loan"). [ECF No. 20 at 2]. He maintains that in January or February 2017, he entered into a loan modification ("2017 Modification") and arrangement to make payments through a third party, Incharge Debt Solutions ("Incharge"). *Id.* He claims that, pursuant to the modification, his monthly payments were to be reduced from $185 to $139 and the term of his loan was to be extended by four months, resulting in an approximately $2,500 reduction in his future projected loan balance. *Id.* He maintains Defendant sent him a letter, and he signed to indicate his agreement to the four-month repayment extension. *Id.* However, he contends Defendant and its manager, John Ferrique ("Ferrique"), failed to send him documentation reflecting the terms of the modified agreement, despite his multiple requests. *Id.* Plaintiff claims Ferrique informed him that he could not provide the terms to him directly, as his payments were made through Incharge. *Id.* He asserts that he asked Incharge to request the loan modification documents, but Ferrique failed to provide them to Incharge. *Id.*

Plaintiff claims he wrote a letter to Defendant's local branch in July

2

2020, requesting information about loan modification and detailing his concerns and desire to resolve the situation without resorting to legal action, but Defendant provided no response. *Id.* He claims the letter was forwarded to Defendant's headquarters a few weeks later. *Id.* He admits Defendant subsequently responded, but failed to provide the requested information or to correct the situation with the loan. *Id.*

Plaintiff asserts that in July 2020,[1] he filed a dispute with consumer reporting agency ("CRA") Experian, after he noticed Defendant reported a much higher outstanding balance than he believed he owed. *Id.* at 3. He maintains Experian presumably contacted Defendant, which affirmed the balance he had contested. *Id.* He claims in late-2020 or early-2021, he upgraded his credit monitoring service with Experian, allowing him to view details of his credit history. *Id.* He states he noticed that Defendant reported late payments for three consecutive months in 2017, despite regular payments by Incharge on his behalf over the period. *Id.* He admits he did not challenge this aspect of the report with Experian when he noticed it, as he did not believe it would be productive, given their prior response. *Id.* However, he claims he contacted Experian on August 9, 2021, to dispute the record of late payments and that

---

[1] Plaintiff specified he performed this action in "July 2021," [ECF No. 20 at 3], but this appears to be a typographical error, as explained below.

on August 19, 2021, Experian informed him that Defendant had verified as accurate the three late payments reflected on his credit report. *Id.*

Plaintiff alleges that in March 2021, his attorney wrote a letter to Defendant's headquarters requesting the loan modification information on his behalf. *Id.* He maintains Defendant failed to provide a response. *Id.*

Plaintiff alleges Defendant violated the FCRA, dishonored or breached the modified agreement, failed to provide documentation of the terms of the contract, failed to properly report payment balances and history to CRAs, and committed fraud. [ECF No. 20 at 4]. He maintains that, as a result of Defendant's actions, he sustained damage to his credit that caused him to be denied credit and pay a higher cost for credit he received. *Id.*

Defendant originally moved to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) [ECF No. 11], and Plaintiff moved to amend his pleadings [ECF No. 14]. The undersigned issued an order granting Plaintiff's motion to amend and rendering Defendant's motion moot. [ECF No. 18]. Plaintiff subsequently filed an amended complaint. [ECF No. 20]. On September 8, 2021, Defendant filed the instant motion to dismiss. [ECF No. 24].

II.    Discussion

A.    Defendant's Motion to Dismiss

1.    Standard

A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244. Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se

5

complaint, the plaintiff's allegations are presumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.3d 387, 390–91 (4th Cir. 1990).

2.     Analysis

a.     FCRA Claims

Plaintiff argues he is asserting a claim under the FCRA. Although he does not specifically reference § 1681s-2 of the FCRA, which addresses responsibilities of furnishers of information to CRAs, his claim appears to be related thereto.

Defendant argues Plaintiff's amended complaint is confusing as to when the alleged dispute was made, as he alleges he filed disputes with Experian in July 2021 and on August 9, 2021. [ECF No. 24 at 4]. It maintains Plaintiff's FCRA claims are confusingly pled and fail to state a cause of action. [ECF No. 28 at 2].

This court has previously declined to dismiss a pro se complaint where a

typographical error appeared obvious and could be corrected based on a plain reading of the complaint. *See Chambers v. Medical University Hosp. Authority*, C/A No. 2:11-261-RMG, 2011 WL 2559605, at *2 (D.S.C. June 28, 2011). Although Plaintiff specifies he filed the first dispute with Experian "in July 2021," he also asserts he filed the dispute "[a]bout at same time" he wrote the letter to Defendant's local branch, which he claimed was in July 2020. *See* ECF No. 20 at 2–3. He references subsequent events as occurring "[a]t end of 2020 or beginning 2021," *Id.* at 3, leading the undersigned to conclude "2021" was a typographical error and he meant "2020."[2]

Turning to his potential claims under the FCRA, Plaintiff appears to allege he notified Defendant of its inaccurate reports to CRAs both directly and by disputing the reports with a CRA. Section 1681-s2(a)(1)(B) prohibits a person from furnishing information relating to a consumer to any reporting agency if: "(i) the person has been notified by the consumer, at the address specified for the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." 15 U.S.C.A. § 1681s-2(a)(1)(D). Plaintiff claims he wrote a letter to Defendant's local branch in July 2020 that was forwarded to Defendant's headquarters a few weeks later and that

---

[2] Plaintiff states in his response to the motion to dismiss that he filed the initial dispute with Experian in July 2020. [ECF No. 27 at 2].

Defendant provided a "dismissive" response, refusing to provide him with the requested information or correct the situation with the loan. [ECF No. 20 at 2–3]. He maintains he had an attorney "write a letter to Lendmark Headquarter on my behalf with request for information about loan modification" that Defendant ignored. *Id.* at 3. Section 1681s-2(a) delegates enforcement to government officials and does not create a private right of action. *See* 15 U.S.C.A. § 1681s-2(d). To the extent he is so attempting, Plaintiff cannot pursue claims against Defendant based on his or his attorney's direct contact pursuant to § 1681s-2(a).

Plaintiff's alleged reports to Experian and Defendant's duties with respect thereto are addressed under 15 U.S.C.A. § 1681s-2(b). Section 1681s-2(b) has been recognized as creating a private right of action. The Fourth Circuit has explained:

> [U]nder the FRCA, when a furnisher of information to consumer reporting agencies is notified of a credit dispute, it must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency . . .," and "report the results of the investigation to the consumer reporting agency" within thirty days of being notified of the dispute. 15 U.S.C. § 1681s-2(b)(1), (2), 15 U.S.C. § 1681i(a). However, a furnisher's duty to investigate is not triggered until it receives notification of a dispute from a consumer reporting agency. *See* 15 U.S.C. § 1681s-2(b)(1); *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 784 (W.D. Ky. 2003) ("This means that a furnisher of credit information, such as the Bank, has no responsibility to investigate a credit dispute until after it receives

> notice from a consumer reporting agency.") (emphasis in original). Once the duty to investigate is triggered, a furnisher breaches that duty if it fails to comply within thirty days.

*Mavilla v. Absolute Collection Services, Inc.*, 539 F. App'x 202, 208 (4th Cir. 2013). "To prevail on a claim under § 1681s-2(b), a plaintiff must demonstrate that (1) she notified a consumer reporting agency of the disputed information, (2) the consumer reporting agency notified the furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Wilson v. Wells Fargo Bank, N.A.*, C/A No. 2:20-2780-BHH-MHC, 2021 WL 2003524, at *4 (D.S.C. Apr. 30, 2021) (citing *Alston v. Branch Banking & Tr. Co.*, C/A No. GJH-15-3100, 2016 WL 4521651, at *6 (D. Md. Aug. 26, 2016); *Hoback v. Synchrony Bank*, C/A No. 6:19-18, 2019 WL 2438794, at *2 (W.D. Va. June 11, 2019), report and recommendation adopted by 2021 WL 2003184 (D.S.C. May 19, 2021).

As stated above, Plaintiff alleges he first contacted Experian to dispute Defendant's reports in July 2020. [ECF No. 20 at 3]. He states Experian "presumably contacted" Defendant, which "had a chance to review properly an impact of loan modification on reporting's accuracy to Credit Bureaus," but "failed to do it, and reaffirmed prior balance on account." *Id.* Plaintiff's allegation are vague insomuch as he fails to specify exactly when he contacted Experian, when Experian notified Defendant of the dispute, what Defendant

9

did to investigate, and when Experian notified him of Defendant's response. However, given Plaintiff's assertion that he disputed the account balance with Experian in July 2020 and that Defendant subsequently "reaffirmed [the] prior balance on [the] account," Plaintiff's assumption that Experian "[p]resumably . . . contacted" Defendant appears reasonable. *See* ECF No. 20 at 3. Plaintiff's allegation that Defendant "had a chance to review properly" the accuracy of the account balance as reported to the CRA, but "failed to do it" is sufficient to support an allegation that Defendant violated the provisions of § 1681s-2(b). *See, e.g., Perkins v. S.C. Cmty. Bank*, C/A No. 3:14-3245-TLW, 2017 WL 121851, at *3 n.5 (D.S.C. Jan. 12, 2017) (noting there is "some dispute about whether it is sufficient for a complaint to allege that the consumer notified a CRA of the dispute, or whether the complaint must allege that the furnisher received notification from a CRA of the dispute") (citing *White v. Green Tree Servicing, LLC*, 118 F. Supp. 3d 867, 874–75 (D. Md. 2015)).

Plaintiff may not be able to assert any more specific allegation as to the reasonableness of Defendant's investigation, as Defendant possesses the information that would show the reasonableness of its investigation. *See Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 253 (4th Cir. 2017) ("This determination whether a furnisher's investigation was "reasonable" is based on an evaluation of information within the furnisher's possession, such

as correspondence between the consumer and the furnisher, the date identified by the reporting agency as disputed, and the furnisher's other records relating to the disputed account.") (citing *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 151 (4th Cir. 2008) (holding that a bank's internal records of ongoing correspondence could support a conclusion that the bank intended not to furnish accurate information to the reporting agencies)).

Plaintiff also alleges he contacted Experian to dispute Defendant's reports on August 9, 2021. [ECF No. 20 at 3]. He cannot proceed in this action with respect to his August 9, 2021 inquiry because Defendant had not breached any duty under the FCRA as to that inquiry at the time this action was commenced or at the time Plaintiff filed his amended complaint. *See Mavilla*, 539 F. App'x at 208 ("Here, the undisputed facts demonstrate that ACS received notification of the disputed debt on September 27, 2010 . . . . It is also uncontested that this action was commenced on October 4, 2010, only five days after ACS's duties arose. Thus, at the time of this suit, ACS had not breached any duty under the FCRA.").

Interpreted liberally and in the light most favorable to Plaintiff, his allegations support a cause of action pursuant to Section 1681s-2(b) as to the July 2020 dispute. Accordingly, the undersigned recommends denying Defendant's motion to dismiss Plaintiff's claim for violation of § 1681s-2(b) of

11

the FCRA.

        b.      Breach of Contract

Plaintiff attempts to allege a cause of action for breach of contract. He references the 2016 Loan and the 2017 Modification. [ECF No. 20 at 2]. Defendant argues Plaintiff's breach of contract claim fails because he cannot point to a contract or provision of an existing contract that would preclude the action he describes. [ECF No. 24 at 3]. The undersigned agrees with Defendant and finds that Plaintiff has failed to plead the essential elements for a breach of contract action.

Under South Carolina law, a plaintiff bears the burden of establishing the existence and terms of the contract, defendant's breach of one or more of the contractual terms, and damages resulting from the breach. *Taylor v. Cummins Atl., Inc.*, 852 F. Supp. 1279, 1286 (D.S.C. 1994) (citing *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 124 S.E.2d 602, 610 (S.C. 1962)).

To the extent Plaintiff alleges his September 2016 loan with Defendant served as a contract, he has not established the terms of the contract such as the amount borrowed, interest rate, or repayment period. *See* ECF No. 20 at 2. He does not specifically allege Defendant breached any specific terms of this contract, as his allegations as to breach appear to center on the 2017 Modification. *See id.* Therefore, Plaintiff has not supported a cause of action

12

for breach of the September 2016 contract.

Although Plaintiff alleges Defendant breached the 2017 Modification, he has failed to demonstrate that the 2017 Modification created a contract between him and Defendant. A contract requires "a meeting of the minds of the contracting parties in regard to the essential terms." *See Fulmer v. London, Liverpool & Globe Fire Ins. Co.*, 174 S.E. 466, 467 (S.C. 1934). Plaintiff asserts more specific terms as to the 2017 Modification, noting payments were to be made through Incharge, monthly payments were reduced from $185 to $139, an additional four months were added to the period of repayment, and the future projected balance was to be reduced by $2,500.[3] [ECF No. 20 at 2]. However, he does not specify whether the alleged terms were agreed upon by him and Defendant, Defendant and Incharge, him and Incharge, or him, Incharge, and Defendant. Plaintiff admits the only agreement he signed with Defendant was "to extend repayments by four months." *Id.* His allegations do not support the meeting of the minds required for the 2017 Modification with Incharge to serve as a contract between him and Defendant. Therefore, Plaintiff has failed to plead a cause of action for breach of contract of the 2017 Modification, and the undersigned recommends this cause of action be

---

[3] Plaintiff fails to specify the amount owed at the time of the modification, the interest rate, or the anticipated period of repayment. [ECF No. 20 at 2].

dismissed.

c.     Fraud

Plaintiff alleges Defendant violated a "Fraud Statute." [ECF No. 20 at 2]. It appears that Plaintiff is attempting to allege that Defendant engaged in fraud. In support of such an allegation, Plaintiff claims Ferrique "attempt[ed] to evade furnishing [him]" documentation containing the terms of the modified agreement "or even information" and "[h]is conduct was deliberately deceptive." *Id.* at 2. He contends Ferrique claimed he could only provide information as to the 2017 Modification to Incharge, but declined to provide such information after Incharge requested it. *Id.* He further states: "My strong impression was that Lendmark wanted to keep an option for them, to squeeze additional money from me even after I satisfied terms of modified agreement." *Id.*

Defendant argues Plaintiff has failed to adequately plead a claim for fraud. [ECF No. 24 at 4]. To establish a cause of action for fraud, the following elements must be proven: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate

14

injury. The failure to prove any element of fraud or misrepresentation is fatal to the claim. *Schnellmann v. Roettger*, 645 S.E.2d 239, 241 (2007) (citations omitted). Furthermore, "fraud cannot be presumed; it must be proved by clear, cogent, and convincing evidence." *Robertson v. First Union Nat'l Bank*, 565 S.E.2d 309, 314 (S.C. Ct. App. 2002) (internal citation omitted)

The court's decision in *Turner v. Milliman*, 708 S.E.2d 766 (S.C. 2011), provides further guidance. The *Turner* court elaborate on the concept that neither a broken promise nor making a statement to do something in the future, that is not done, can qualify as a fraudulent or negligent representation: "Evidence of a mere broken promise is not sufficient to prove negligent misrepresentation." *Id.* at 769–70. The *Turner* court noted "to be actionable, a statement must relate to a present or preexisting fact, and cannot be predicated on unfulfilled promises or statements as to future events." *Id.* at 770.

Further, pursuant to Fed. R. Civ. P 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Only "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* This means that a plaintiff alleging fraud must plead "the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)

(quoting *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)). The pleading standard of Rule 9(b) requires Plaintiff to "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 705 (4th Cir. 2018) (*quoting Wilson*, 525 F.3d at 379) (internal quotation marks omitted). A party's "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, at 783 n.5 (4th Cir. 1999).

Plaintiff alleges Ferrique, presumably acting on behalf of Defendant, made false representations and his false representations were made with the intention of "squeez[ing] additional money from [him]." [ECF No. 20 at 20]. Ferrique's failure to provide the requested documentation was not a false representation. To the extent Plaintiff alleges Ferrique made a false statement, the false statement was that he would provide documentation to Incharge. However, to the extent Ferrique's statement was intended to induce Plaintiff to act, it appears the intended action was for Plaintiff to have Incharge request documentation of the 2017 Modification, not to "squeeze additional money" from him. Because Plaintiff has not indicated that Defendant obtained

16

anything as a result of Ferrique's purportedly false representation, Plaintiff has not sufficiently pled a cause of action for fraud. Accordingly, the undersigned recommends the cause of action for fraud be dismissed.

B.     Plaintiff's Motion for Sanctions

On September 27, 2021, Plaintiff filed a motion requesting that the court sanction Defendant based on his failure to receive a copy of the motion to dismiss. [ECF No. 29]. Plaintiff maintains Defendant requested on September 3, 2021, that the deadline for filing the motion to dismiss be extended by two weeks, but subsequently filed the motion on September 8, as opposed to waiting the additional two weeks. *Id.* at 1. He acknowledges Defendant's counsel's certification that he served the motion and admits he received a copy of Defendant's motion and an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) ("*Roseboro* Order"), mailed from the court. *Id.* However, Plaintiff asserts he had not received the copy Plaintiff's counsel stated he mailed within two weeks of the date he claimed to have mailed it. *Id.* He alleges Defendant abused the court's process to deny or reduce his opportunity to respond to the motion by requesting the extension, filing the motion prior to the end of the extension period, and failing to mail a copy of the motion to him. *Id.* at 2, 4.

The undersigned interprets Plaintiff's motion as one for sanctions

pursuant to Fed. R. Civ. P. 11(b), which provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3)    the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4)    the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P 11(c)(1). The party moving for sanctions bears the burden to demonstrate the specific conduct violates Rule 11(b). Fed. R. Civ. P. 11(c).

In a certificate of service, Defendant's counsel signed the following: "I

HEREBY CERTIFY that on 8th day of September 2021, the foregoing document was served via the Court's CM/ECF system and via U.S. Mail to" Plaintiff at the address he provided for service. [ECF No. 24 at 11]. The motion and the record reflect Defendant's counsel's mailing address as "Houston, Texas." *Id.* at 10. The docket reflects that Defendant filed the motion [ECF No. 24], the court issued a *Roseboro* Order [ECF No. 25], and the Columbia Clerk's office placed the *Roseboro* Order and a copy of the motion to dismiss in the mail to Plaintiff on September 8, 2021 [ECF No. 25]. As the Columbia Clerk's office mailed the *Roseboro* Order to Plaintiff's address in Columbia, South Carolina on the same day that Defendant's counsel certified having mailed the motion to dismiss to Plaintiff from Houston, Texas, it is not surprising that Plaintiff received the *Roseboro* Order prior to receiving the copy of the motion to dismiss mailed by Defendant's counsel.

Plaintiff's allegations as to ulterior motive underlying Defendant's filing of the extension request and the motion are unsupported speculation. Plaintiff presents no evidence to support his allegation that Defendant's counsel failed to mail a copy of the motion on September 8, 2021, as certified. Although Plaintiff claimed he did not receive a copy of Defendant's motion within two weeks, numerous factors, including distance, processing delays, and human error on the part of the United States Postal Service, might reasonably account

for a mail-processing time of greater than two weeks. Given Defendant's counsel's certification and Plaintiff's failure to present actual evidence of a violation of Fed. R. Civ. P. 11(b), the undersigned denies Plaintiff's motion for sanctions against Defendant.

## III.   Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the court grant Defendant's motion to dismiss the breach of contract and fraud causes of action and deny Defendant's motion to dismiss the FCRA claim pursuant to § 1681s-2(b). The undersigned denies Plaintiff's motion for sanctions.

IT IS SO ORDERED AND RECOMMENDED.

October 6, 2021                                       Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).