IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Boris Shulman, ) | C/A No.: 3:21-1887-CMC-SVH |
| Plaintiff, ) | |
| vs. ) | ORDER |
| Lendmark Financial, ) | |
| Defendant. ) | |

This matter comes before the court on third motion filed by Boris Shulman ("Plaintiff") to compel Lendmark Financial ("Defendant") to respond to his discovery requests. [*See* ECF Nos. 84, 85]. Also pending before the court is Plaintiff's motion for teleconference filed June 6, 2022. [ECF No. 89]. The court construes Plaintiff's motion for teleconference as a fourth motion to compel, filed consistent with the court's previous order requiring the parties to confer and request a telephone conference prior to filing any discovery motions and addresses the motion herein.

All pretrial proceedings in this case were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(e) (D.S.C.). For the reasons that follow, the undersigned denies Plaintiff's third and fourth motions to compel.

I.     Factual and Procedural Background

On May 9, 2021, Plaintiff filed a complaint against Defendant in the

Magistrate's Court of Richland County, South Carolina, concerning the way in which Defendant serviced his loan. [ECF No. 1-1 at 7]. On June 21, 2021, Defendant removed the action to this court based on federal question jurisdiction, given that Plaintiff's allegations appeared to pertain to allegedly-improper credit reporting under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). [ECF No. 1].[1]

Plaintiff alleges in relevant part that he opened a loan with Defendant in September 2016. [ECF No. 20 at 2]. He maintains that in January or February 2017, he entered into a loan modification and arrangement to make payments through a third party, Incharge Debt Solutions ("Incharge"). *Id.* He claims that, pursuant to the modification, his monthly payments were to be reduced from $185 to $139 and the term of his loan was to be extended by four months, resulting in an approximately $2,500 reduction in his future projected loan balance. *Id.* He claims in late-2020 or early-2021, he noticed that Defendant reported late payments for three consecutive months in 2017, despite regular payments by Incharge on his behalf over the period. *Id.* Plaintiff asserts he put forth effort to resolve this dispute prior to filing the instant lawsuit and that he has sustained damage to his credit that caused him to be denied credit and pay a

---

[1] On September 8, 2021, Defendant filed a motion to dismiss that the undersigned recommended should be granted in part and denied in part. [ECF Nos. 24, 30]. The district judge adopted the undersigned's report and recommendation, dismissing Plaintiff's breach of contract and fraud claims and allowing Plaintiff's FCRA claim to proceed. [ECF No. 36].

higher cost for credit he received. *Id.*

Defendant summarizes the relevant facts at issue as follows:

> This case concerns purported claims by Plaintiff . . . against [Defendant] . . . for violation of the [FCRA] stemming from an apparent misunderstanding of Plaintiff's payment obligations to Lendmark while discussing a modification of his loan terms. Plaintiff opened a Lendmark account on September 1, 2016. Plaintiff retained the services of [Incharge] to negotiate a modification of the loan in early 2017. While Lendmark and Incharge were discussing the terms of a potential modification—which ultimately came to fruition—Plaintiff failed to continue to make timely payments on his loan with Lendmark. Accordingly, Lendmark reported the missed payments to the consumer reporting agencies. Nothing about Lendmark's reporting is inaccurate based on its business records. Notably, subsequent to the modification, payments were made on the account and Plaintiff's credit report reflects those timely payments.

[ECF No. 65 at 1–2].

Discovery is currently scheduled to close on August 31, 2022. [ECF No. 90].

II. Discussion

    A.    Plaintiff's Third Motion to Compel

In his third motion to compel, Plaintiff seeks more complete responses to his first requests for interrogatories and production, specifically interrogatories 1, 2 and 4, and requests for production 3–6. [*See* ECF No. 84, ECF No. 93 at 17]. The court addresses each request in turn below.

> **Interrogatory 1**: Please provide full explanation, how Lendmark understood Loan Modification in question involved 3d party (Incharge Debt Solution).
>     a.    How loan modification should affect Loan Repayment schedule?
>     b.    When account in question will be considered paid off (after loan modification)?

3

    c.  What documents should backup this loan modification?

[ECF No. 84-1 at 2].

  In response, Defendant has provided the following:

  Subject to, and without waiver of the foregoing objections, Lendmark exercises its rights under Rule 33(c) and directs Plaintiff to the documents previously produced by Lendmark demarcated Lendmark Production 000001–00059, including the Debt Management Proposal demarcated Lendmark Production 000005–00006.

  Lendmark further responds that on September 1, 2016, Plaintiff obtained a loan with Lendmark, Loan No. 0089-022036-2 (the "Loan"), with a 60-month term and a total repayment amount of $11,040.00. Originally, Plaintiff's first payment on the Loan of $184.00 was due on October 15, 2016, and the final payment was due on September 15, 2021. Plaintiff made payments of $184.00 to Lendmark on October 15, 2016, November 15, 2016, and December 15, 2016. Plaintiff failed to make any payments to Lendmark for any amount in January and February of 2017.

  On February 24, 2017, InCharge Debt Solutions ("InCharge") sent Lendmark a Debt Management Proposal, proposing a total repayment amount of $10,488.00 with a disbursement date of March 28, 2017, and monthly payments of $139.00 for fifty seven (57) months. Lendmark accepted this modification.

  Plaintiff made a payment of $139.00 to Lendmark (via InCharge) on March 8, 2017, and Lendmark correctly applied that payment to January 2017, as Plaintiff had missed that payment. Plaintiff also made a payment of $139.000 to Lendmark (via InCharge) on April 3, 2017, and Lendmark correctly applied that payment to February 2017 as Plaintiff had also missed that payment. Additionally, Plaintiff made a payment of $139.00 to Lendmark (through InCharge) on May 2, 2017, and Lendmark correctly applied that payment to March 2017 since the account was two months in arrears.

  In May 2017, Lendmark granted Plaintiff a deferral, bringing the account current. Plaintiff made a payment of $139.00 to Lendmark (via InCharge) on June 5, 2017, which Lendmark correctly applied to June 2017 as a result. Thereafter, Plaintiff made all monthly

> payments of $139.00 (via InCharge) to Lendmark for the remaining fifty-four (54) months of the Loan. As of December 8, 2021, the Loan has been paid off by Plaintiff.

[ECF No. 65-1 at 5–6; *see also* ECF No. 93-1 at 7 (debt management proposal)].

Plaintiff primarily objects to Defendant's response in that the monthly payments listed by Defendant as modified, "$139.00 for fifty seven (57) months," in addition to the three payments made by Plaintiff of $184.00 prior to loan modification, do not equal "a total repayment amount of $10,488.00." Plaintiff seeks an order from the court compelling Defendant "to reconcile this math contradiction." [ECF No. 93 at 4–5].

Fed. R. Civ. P. 37(a) provides that if a party fails to respond to discovery, the party seeking discovery may move for an order compelling production. If a party fails to make a required disclosure, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a).

There is no indication in the record, based on email exchanges submitted by Defendant, that Plaintiff attempted to confer with Defendant to obtain the math explanation he now seeks the court to compel. [*See* ECF No. 92-1]. Instead, Plaintiff requested "all missing answers to my 1st Sets of Documents Productions Requests and Interrogatories," and when Defendant requested clarification, Plaintiff responded: "I meant all my requests and Interrogatories, which were not

5

answered . . . ." *See id.* This exchange is insufficient to meet the requirements of Fed. R. Civ. P. 37(a) or the court's previous order [*see* ECF No. 33] directing the parties "to communicate and cooperate with each other." *See also, e.g., Parker v. United States*, C/A No. JPM-16-1052, 2016 WL 7383833, at *1 (D. Md. Dec. 20, 2016) ("Emails or letters sent as reminders that the requested information has not been provided are not an attempted conference between parties.")).

"The party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *S.C. State Conf. of NAACP v. McMaster*, C/A No. 3:21-03302-JMC, 2022 WL 425011, at *3 (D.S.C. Feb. 10, 2022) (citing *Oppenheimer v. Episcopal Communicators, Inc.*, C/A No. 1:19-00282-MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020)). Here, however, Defendant has met this burden, representing to the court that it "has done its best to understand Plaintiff's confusing interrogatory and the above is all of the information that Lendmark possesses regarding the loan modification and loan repayment schedule," further representing that "Lendmark simply does not have any further documents or information to provide to Plaintiff." [ECF No. 65 at 8–9].[2]

Plaintiff's motion to compel a more complete response to his interrogatory 1 is denied.

---

[2] The court does not have before it all of the documentation referenced by Defendant in response to Plaintiff's interrogatory 1, documentation that may explain this alleged "math contradiction."

6

>**Interrogatory 2**: Please provide full explanation, why did Lendmark request plaintiff to sign 4-months extension of loan repayment lifespan?

[ECF No. 84-1 at 2].

>Defendant responds as follows:

>Lendmark is unsure of what Plaintiff means by "request[ing] plaintiff to sign a 4-months extension of loan repayment lifespan." In his motion to compel, Plaintiff discusses a letter he received from Sonya Miller [("Miller")]. Lendmark has reviewed its records and does not have said letter Plaintiff claims exists. Lendmark cannot produce a document that it does not have in its possession, custody, and control. Additionally, in its supplemental responses, Lendmark unequivocally stated that it did not request that Plaintiff sign a 4-month extension of the loan.

[ECF No. 65 at 9].

Although Plaintiff argues he has repeatedly spoken to Defendant about this alleged letter and submitting an affidavit attesting it exists [ECF No. 93 at 6–7, ECF No. 93-1 at 3, 5], "Plaintiff has put forth no concrete basis on which the Court could find that 'relevant, responsive documents exist and are being withheld.'" *Roe v. Bishop of Charleston*, C/A No. 2:21-00020-RMG, 2021 WL 4272595, at *4 (D.S.C. Sept. 20, 2021) (citing *Brown-Thomas v. Hynie*, C/A No. 1:18-02191-JMC, 2021 WL 1049935 at *3 (D.S.C. Mar. 19, 2021); *see also Susko v. City of Weirton*, C/A No. 5:09-0001, 2011 WL 98557, at *4 (N.D.W. Va. Jan. 12, 2011) ("mere speculation that documents exist is not a sound basis for a motion to compel production. Rather, the moving party must have a colorable basis for its belief that relevant, responsive documents exist and are being improperly withheld");

7

*Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 252 (M.D.N.C. 2010) ("[E]ven an informed suspicion that additional non-privileged documents exist . . . . cannot alone support an order compelling production of documents.").

Accordingly, Plaintiff's motion to compel is denied as to Plaintiff's interrogatory 2.

> **Interrogatory 4**: Please provide full explanation, why reported to the Credit Bureaus account balances were not adjusted / reduced due to loan modification?

[ECF No. 84-1 at 2].

Defendant provided the following response in part: "based on its review of the records, its credit reporting accurately reflected the status of the account." [ECF No. 65 at 10, ECF No. 93 at 8]. Although Plaintiff argues in response that "[a]ccording [to] Defendant's own supplement reviewed and analyzed under Interrogatory 1, reported balances have to be about $2500 lower than they have been reported to all three Credit Bureaus for about five years" [ECF No. 93 at 9], Plaintiff has not provided any reported balances provided to credit bureaus by Defendant indicating that Defendant's response to Plaintiff's interrogatory 4 is insufficient. Accordingly, the undersigned denies Plaintiff's motion to compel as to this interrogatory.

> **Request 3**: Please provide Copies of all documents related to the loan in question between Lendmark and plaintiff, which furnishing department received from local branch, Headquarter or other parts of Lendmark as organization; and also copies of documents Furnishing department sent out to other areas of Company.

8

> **Request 4**: Please provide Copies of all documents, related to the loan in question between Lendmark and plaintiff, which furnishing department furnished to all three Credit bureaus.
>
> **Request 5**: Please provide Copies of all documents, related to the loan in question between Lendmark and plaintiff, which local branch department received from plaintiff, other areas of Lendmark, and to other outside entities.
>
> **Request 6**: Please provide Copies of all documents, related to the loan in question between Lendmark and plaintiff, which local branch department sent to plaintiff, to other areas of Lendmark, and to other outside entities.

[ECF No. 84-1 at 5–6].

In each of the above requests, Plaintiff seeks documents related to the loan in question. As to these requests, Defendant argues as follows:

> These requests are all overbroad, vague, and so confusing that Lendmark cannot possibly determine what Plaintiff is seeking. Lendmark also maintains that these requests assume facts that are not in evidence and seek documents and information that Plaintiff already possesses or controls. Plaintiff repeatedly states in his motion to compel that "Lendmark was actively engaged in cover-up activities to hide late 30-days reporting's to Equifax and Transunion"—an absurd and absolutely false statement in its own right. In any event, Lendmark has reviewed its business records and has already produced the responsive, non-privileged documents related to the loan agreement between Lendmark and Plaintiff (*see* Lendmark Production 000001-000066). Thus, Lendmark would respectfully ask the Court to deny Plaintiff's Requests for Production No.'s 3, 4, 5, 6 . . . .

[ECF No. 65 at 12–13].

As to request 3, Plaintiff primarily argues that further communications between the furnishing department and other areas of Lendmark "could be [] evidence of impropriety of Lendmark in regard [to] my FCRA claim" and "could

9

reveal [] evidence of motive why [the] Furnishing department changed its reporting to Equifax and Transunion." [ECF No. 93 at 11]. As to request 4, Plaintiff echoes that further communications could show why Defendant "changed its reporting to Equifax and Transunion." *Id.* at 13. As to requests 5 and 6, Plaintiff primarily argues further communications responsive to these requests will allow Defendant to provide the letter, referenced above, that Plaintiff allegedly received from Miller. *Id.* at 15, 17.

Similar to above, Plaintiff has failed to submit a "concrete basis on which the Court could find that 'relevant, responsive documents exist and are being withheld.'" *Roe*, 2021 WL 4272595, at *4 (citing *Brown-Thomas*, 2021 WL 1049935 at *3). Accordingly, Plaintiff's motion to compel as to these requests is denied.[3]

In sum, Plaintiff's third motion to compel is denied.

---

[3] To the extent that Plaintiff disputes that Defendant is allowed to withhold documents based on privilege [*see* ECF No. 93 at 10], Fed. R. Civ. P. 26(b)(1) provides in part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defense and proportional to the needs to the case . . . ," subject to Fed. R. Civ. P. 26(b)(5)(A). *See* Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").

B.  Plaintiff's Fourth Motion to Compel

In this motion, Plaintiff seeks to issue subpoenas to Transunion and to Miller. As represented by Plaintiff and evidenced by email interactions between Plaintiff and Defendant, Defendant does not object to the former, rendering Plaintiff's motion to compel moot as to this issue. [ECF No. 89 at 1, ECF No. 89-1 at 3]. As to the latter, Defendant "vehemently objects," arguing as follows:

> First, Sonya Miller has not been employed by Lendmark for many years, and she should not be in personal possession of any Lendmark documents. Moreover, the purported letter you seek was allegedly sent during her employment at Lendmark and, therefore, any discovery related to the duties of her employment at Lendmark must be directed to my firm. Second, you have already requested information about the alleged "request for 4-month extension" during discovery. In its Supplemental Responses to your First Interrogatories, Lendmark stated that "it did not request Plaintiff to sign a 4-month extension of the Loan." Lendmark does not have a copy of this alleged letter that you seek, and it is entirely suspect that you don't have a copy of it, either. Third, even if this letter did exist—which is clearly does not—it is entirely irrelevant to your FCRA claim in this case. Fourth, any self-serving testimony regarding the existence of this alleged letter is not only irrelevant, it is inadmissible under no fewer than three of the Federal Rules of Evidence. Finally, any subpoena directed to Sonya Miller in this case will be met with a motion to quash, and Lendmark will seek an award of attorney's fees against you for having to respond thereto.

[ECF No. 89-1 at 4].

As addressed above, Plaintiff has repeatedly argued, and Defendant has repeatedly denied, the existence of the letter from Miller, Defendant's former employee, to Plaintiff allegedly providing for a four-month extension of the loan in question. The existence of such a letter, however, is irrelevant to Plaintiff's

11

pending FRCA claim against Defendant which is based on Defendant's reporting to consumer reporting agencies, incorrectly according to Plaintiff, that Plaintiff failed to make payments on his loan. [*See* ECF No. 20, ECF No. 30, ECF No. 36].[4]

III.  Conclusion

For the foregoing reasons, the undersigned denies Plaintiff's third and fourth motions to compel. [*See* ECF No. 84, 85, 89].

IT IS SO ORDERED.

June 15, 2022                                                         Shiva V. Hodges
Columbia, South Carolina                                 United States Magistrate Judge

---

[4] As previously stated by this court as to this claim, "[t]o prevail on a claim under § 1681s-2(b), a plaintiff must demonstrate that (1) she notified a consumer reporting agency of the disputed information, (2) the consumer reporting agency notified the furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Wilson v. Wells Fargo Bank, N.A.*, C/A No. 2:20-2780-BHH-MHC, 2021 WL 2003524, at *4 (D.S.C. Apr. 30, 2021) (citing *Alston v. Branch Banking & Tr. Co.*, C/A No. GJH-15-3100, 2016 WL 4521651, at *6 (D. Md. Aug. 26, 2016); *Hoback v. Synchrony Bank*, C/A No. 6:19-18, 2019 WL 2438794, at *2 (W.D. Va. June 11, 2019), report and recommendation adopted by 2021 WL 2003184 (D.S.C. May 19, 2021).